UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARRCO CONSUMER PRODUCTS INC.,

    Plaintiff,

v.                                                      Case No. 8:23-cv-01180-TPB-TGW

RAMAN BAJAJ,

    Defendant.
_____/

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court following a bench trial held on February 4, 2025, and February 5, 2025. (Docs. 133; 137). Following the bench trial, the parties submitted written closing arguments and responses to the other party's closing argument, the last of which was filed on March 10, 2025. (Docs. 135; 136; 142; 143; 144; 145; 146). Upon review of the case file, evidence submitted during the bench trial, and record, the Court finds as follows:

**Findings of Fact**

1.    Bajaj started selling t-shirts at flea markets in New York in the late 1980s or early 1990s for which he registered a series of trademarks including Funatik, Sports Funatik, Fitness Funatik, GolfFunatik, Football Funatik, and Baseball Funatik.

2.    All these registrations lapsed, and some were subsequently refiled.

3.    Sometime between 1999 to 2000, Bajaj moved to Tampa, Florida.

4.    Bajaj has been on Social Security Disability for the past thirty years.

His business has no website, no employees, and no advertising or marketing. It appears the only way it is possible to purchase his products is by knowing him personally.

5. On October 5, 2000, Bajaj filed his first application for registration of the mark FUNATIC. The registration was granted on September 7, 2004 ("First FUNATIC Registration"). This Registration was eventually cancelled on April 10, 2015.

6. Bajaj owns two federal registrations which are at issue in this case:

   a. U.S. Registration No. 3611733 for the mark FUNATIK, in standard characters, for "shirts, t-shirts," in International Class 25. This mark was registered April 28, 2009, based on a claim of use in commerce. ("FUNATIK Registration").

   b. U.S. Registration No. 4969987 for the mark FUNATIC, in standard characters, for "shirts; sweatshirts; t-shirts," in International Class 25. This mark was registered May 31, 2016, based on a claim of use in commerce. ("Second FUNATIC Registration").

7. On August 17, 2010, Bajaj filed a section 8 excusable non-use affidavit with the USPTO to preserve registration 28820285 for the mark FUNATIC. The USPTO relied on the truth of these allegations to grant a renewal.

8. On April 21, 2015, Bajaj filed another section 8 excusable non-use affidavit with the USPTO to preserve the registration for the Bajaj's FUNATIK registration no. 3611733. The USPTO again relied on the truth of these allegations to grant a renewal of the FUNATIK registration at issue in this case.

9. The First FUNATIC registration lapsed for non-renewal in 2015.

10. Bajaj filed a new intent to use application for the FUNATIC mark on February 24, 2015. On February 22, 2016, Bajaj filed a statement of use under oath

claiming to have used the mark in commerce on February 2, 2016, by shipping samples at no cost to an agent in New York.

11. The USPTO relied on the veracity of the statement of use and granted a second FUNATIC registration at issue at this case (registration no. 4969987).

12. Between 1996 and 2024, Bajaj made several sales of FUNATIC and/or FUNATIK t-shirts, totaling approximately $2,000. Between 1995 and 2024, there are documented instances where Bajaj mailed and/or provided sample T-shirts bearing the FUNATIC and/or FUNATIK marks to various companies and individuals, including Dick's Sporting Goods, the National Sporting Goods Association's World Sports Expo '96, Nutmeg Mills, Inc., the Special Olympics International, Major League Baseball Enterprises, National Football League Properties, Inc., QVC, the Dallas Mavericks, Busch Gardens Tampa, and Fanatics, Inc.

13. Between 1995 and 2024, Bajaj also engaged in additional marketing efforts to promote the FUNATIC/FUNATIK mark(s) and solicit sales of his products sold thereunder including personally meeting and/or communicating with representatives of companies. Bajaj further attended numerous trade shows and events where he promoted the FUNATIC/FUNATIK mark(s) and solicited sales of his products

14. On June 20, 2016, Barrco began using the trademark FUNATIC to market its socks and on June 28, 2016, it filed an application for federal registration of the mark for socks.

15. After an office action the application was allowed to lapse to avoid

costs.

16. On March 1, 2018, Barrco filed another application for registration of the mark FUNATIC for socks.

17. The application was quickly granted registration on October 1, 2018, without any office actions being issued and without any opposition from Mr. Bajaj.

18. On November 29, 2018, Barrco filed an intent to use application to register the mark "FUNATIC" on the Principal Register for use in connection with "shirts, t-shirts, sweatshirts" and other apparel in International Class 025, U.S. Application Serial No. 88/210,465.

19. On March 7, 2019, the USPTO refused the Barrco application based on Bajaj's second FUNATIC registration (no. 4969987) and FUNATIK Registration (no. 3611733).

20. The application remains suspended pending resolution of the cancellation filed against Bajaj and this action.

21. Barrco purposefully used the distinctive smiley face design together with the word FUNATIC on socks, for which he was granted a trademark registration, and has not used the FUNATIC or FUNATIK marks for apparel, including shirts, t-shirts, or sweatshirts, pending determination of the validity of Bajaj's marks by the TTAB and by this Court.

22. On April 9, 2019, Barrco filed cancellation number 92071011 before the TTAB seeking cancellation of Bajaj's second FUNATIC registration (no. 4969987).

23. On February 20, 2020, Barrco filed cancellation number 92073513 before the TTAB to cancel Bajaj's FUNATIK Registration (no. 3611733).

24. Bajaj did not counter for cancellation of Barrco's mark in either action although such a claim is compulsory.

25. The TTAB consolidated the two proceedings in response to Barrco's motion to consolidate proceedings.

26. The TTAB also allowed Barrco to amend its petitions for cancellation, to add a claim for fraud on the USPTO and for nonuse.

27. On February 12, 2023, the TTAB issued its decision refusing cancellation of the two marks.

28. Barrco filed a motion for reconsideration. The motion for reconsideration was denied and an appeal was filed to this Court.

## Conclusions of Law

### *Barrco's Complaint*

1. This court has jurisdiction to review the decision of the Trademark Trial and Appeal Board ("TTAB") in this civil action pursuant to 15 U.S.C.A. § 1071(b)(1).

2. "The court may adjudge that an applicant is entitled to a registration upon the application involved, that a registration involved should be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear." *Id.*

3. Barrco has asserted 8 counts in its complaint: (1) review of Trademark Trial and Appeal Board final decision, (2) cancellation of Bajaj's Trademark For Abandonment, (3) cancellation of Bajaj's first registration for fraud on the USPTO, (4) cancellation of Bajaj's second registration for abandonment, (5) cancellation of

Bajaj's second registration for fraud on the USPTO, (6) cancellation of Bajaj's second registration on ground of no bona fide use, (7) damages for false or fraudulent registration of FUNATIK pursuant to 15 U.S.C. § 1120, and (8) damages for false or fraudulent registration of FUNATIC pursuant to 15 U.S.C. § 1120. Based on Bajaj's alleged medical condition, Barrco has chosen not to seek damages for his actions and voluntarily dropped counts 7 and 8.

4. "A challenge to the TTAB's decision in a district court is both an appeal and a new action, which allows the parties to request additional relief and to submit new evidence." *Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Intern. Software, Inc.*, 653 F.3d 448, 452 (7th Cir. 2011) (quotations omitted).

5. "In such an action, the district court wears two hats: It is an appellate reviewer of facts found by the TTAB and is also a fact-finder," provided that new evidence is introduced to the court. *Id.* (quotations omitted).

6. "A court reviewing the TTAB's findings may not reverse those findings absent 'testimony which in character and amount carries thorough conviction.'" *Sandshaker Lounge & Package Store LLC v. Quietwater Ent. Inc.*, 602 Fed. App'x 784, 787 (11th Cir. 2015) (quoting *Coach House Rest, Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991)).

7. "The district court can reverse if it concludes that the law applied by the TTAB was incorrect. Moreover, any equitable rulings rendered by the TTAB may be reversed if the TTAB abused its discretion." *Soro v. Citigroup*, 287 Fed. App'x 57, 59 (11th Cir. 2008) (citing *Coach House Rest, Inc.*, 934 F.2d at 1557).

8. "In cases involving trademark disputes ruled upon by the TTAB,

however, the courts must give proper deference to the decision reached by the Board." *Freedom Sav. Loan Ass'n v. Way*, 757 F.2d 1176, 1180 (11th Cir. 1985).

Barrco's Count I

9. The final decision reached by the Board in the cancellation proceedings – and subsequently in denying Barrco's request for reconsideration – is entitled to proper deference, particularly because the ruling was premised on the correct law and was supported by the evidence of record.

10. The Board's findings were proper and supported by substantial evidence which showed that (a) Bajaj was consistent in his testimony that he shipped and promoted FUNATIC and FUNATIK products together, and (b) his testimony regarding these shipments to prospective purchasers to promote sales of the clothing products showed that he used the FUNATIK trademark on products and never intended to abandon it. *Barrco Consumer Prods. v. Bajaj*, 2023 TTAB LEXIS 138, *7-8 (TTAB April 12, 2023).

11. The Board also acknowledged that "a registrant's self-serving, indefinite testimony unaccompanied by documentary evidence is to be afforded little, if any weight" but found Bajaj's testimony persuasive because "while [he] may be inexperienced and apparently unsuccessful in selling FUNATIC and FUNATIK clothing, his testimony is clear, consistent, and uncontradicted, albeit supported by minimal documentation." *Id.* at *10.

12. Accordingly, and in light of the additional evidence of record in this case and the material facts, the final decision of the Board is affirmed. Bajaj is entitled to judgment as to this count.

Barrco's Counts I, II, IV, and VI of the complaint

13. In Counts I, II, IV and VI, Barrco seeks to find that by making *de minimis* use of the mark and not bona fide use, Bajaj has abandoned the mark FUNATIC (Reg. No. 4969987) and FUNATIK (Reg. No. 3611733).

14. Barrco's burden of proof in cancellation proceedings for abandonment is a preponderance of the evidence. *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1024 (Fed. Cir. 1989) (citing *Massey Junior College v Fashion Inst. Of Technology,* 492 F.2d 1399, 1403, 181 USPQ 272, 275 (CCPA 1974)); *see* McCormick, *Evidence* § 339, at 793 (Cleary ed. 1972).

15. As a preliminary matter, the Bajaj's registrations enjoy a statutory presumption of validity and of Bajaj's ownership and exclusive right to use the Registered Marks in commerce—presumptions which Barrco bears the burden of rebutting. 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce[.]").

16. To show that Bajaj abandoned his trademarks, Barrco must show that: (1) Bajaj ceased using the marks in dispute and (2) Bajaj did so with an intent not to resume such use. *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329 (11th Cir. 2008).

17. "Nonuse for 3 consecutive years shall be prima facie evidence of abandonment." *Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1545 (11th Cir. 1984); *see also* 15 U.S.C. § 1127.

18. A party "may abandon a trademark in certain states without abandoning it in others." *Sheila's Shine Products, Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 124 (5th Cir. 1973).

19. To prove excusable nonuse, the registrant must produce evidence showing that, under his particular circumstances, his activities are those that a reasonable businessman, who had a bona fide intent to use the mark in United States commerce, would have undertaken. *Rivard v. Linville*, 133 F.3d 1446, 1449 (Fed. Cir. 1998) (citing *Imperial Tobacco Ltd. v. Philip Morris, Inc.,* 899 F.2d 1575, 1582, 14 USPQ2d 1390, 1394-1395 (Fed.Cir.1990) (requiring evidence "with respect to what activities it engaged in during the nonuse period or what outside events occurred from which an intent to resume use during the nonuse period may reasonably be inferred")).

20. Trademark rights are not conveyed through mere intent or desire to use a mark commercially. *Planetary Motion v. Techsplosion, Inc.*, 261 F.3d 1188, (11th Cir. 2001) (quoting *Allard Enters. v. Advanced Programming Resources, Inc.*, 146 F.3d 350, 356 (6th Cir.1998)); *see also Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 504 (7th Cir.1992).

21. Congress amended the Lanham Act in 1988 and redefined the term "use in commerce" to mean the "bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a mark." TRADEMARK LAW REVISION ACT (TLRA), Pub.L. No 100-667, 102 Stat. 3935 (1988).

22. A "bona fide" use in commerce in the "ordinary course of trade" requires something more than "token" sales made solely for the purpose of enabling

a trademark registration. § 19:108. Nature of use necessary to support a trademark registration, 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 19:108 (5th ed.) *see also New Wave Innovations, Inc. v. McClimond*, 589 Fed. App'x. 527, 528 (11th Cir. 2015) (affirming decision against registrant based on token use).

23. Uses that are *de minimis* may not establish trademark ownership rights or, even if initially established, may later support a finding of abandonment. *See Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 293 F. Supp. 3d 1334, 1367 (M.D. Fla. 2017) ("*de minimis* use of a trademark is insufficient to establish trademark ownership rights."). This rule applies to both federal registrations and common law marks. *Spiral Direct, Inc.,* 293 F. Supp. 3d at 1367 (use of a common mark "must be sufficient to establish ownership rights[.]"); *see also New Wave Innovations, Inc.,* 589 Fed. App'x at 528 (explaining that trademark rights are gained in the common law via actual use in commerce).

24. Based on the evidence introduced at trial, the Court concludes that although he may not be a good salesman or businessman, Bajaj has – barely – made bona fide use of his marks. Under the totality of the circumstances, the evidence admitted at trial demonstrated a continual effort to create and grow a viable business, though Bajaj's efforts were, at times, impacted by his medical conditions. Consequently, Bajaj is entitled to judgment as to these counts.

25. It must be noted, however, that Bajaj engaged in several questionable sales of merchandise -- mostly to his neighbors -- in a very transparent effort to create evidence he was actually using his marks. By way of example: on April 28, 2019, he sold two t-shirts to James and Cynthia Crookston, his neighbors, for a total

of $20.  The Crookstons provided two separate checks for $10 each; one $10 check noted in the memo section it was for a FUNATI<u>K</u> product, and the other $10 check noted is was for a FUNATI<u>C</u> product (emphasis to <u>K</u> and <u>C</u> added by the court).  Mr. Bajaj executed another similar $20 sale, including two separate $10 checks, the next day, April 29, with Xavier Montero, a different neighbor.  He continued to use this transparent two check strategy on June 30, 2020, when he sold merchandise for $20 to Carol Chase, a different neighbor, and on October 17, 2020, when he sold merchandise for $20 to Michael and Beverly Garside, both of whom were also Bajaj's neighbors.

26. Obviously, these activities were designed by Bajaj to create favorable evidence in support of his bona fide use claim.  However, it is important to recognize that these activities were unnecessary because, under the totality of the circumstances, he had done enough to maintain his marks without these efforts.  In such circumstances, his attempt to help his case by creating favorable evidence is ultimately of little relevance other than bringing his overall credibility into question.

<u>Barrco's Counts I, III, and V of the complaint.</u>

27. In Counts III and V, Barrco seeks cancellation of Bajaj's FUNATIK and FUNATIC registrations on the basis of fraud on the U.S. Patent and Trademark Office.

28. When filing an application, an applicant must provide a verified statement that includes, among other things, a specification that "the mark is in use in commerce" and that "to the best of the verifier's knowledge and belief, the

facts recited in the application are accurate." 15 U.S.C. § 1051(a)(3)(B), (C); *See Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 293 F. Supp. 3d 1334, 1359 (M.D. Fla. 2017).

29. The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. 15 U.S.C. § 1127.

30. When a mark has been in use for five years after registration, and every ten years from registration thereafter, the registrant must file a section eight declaration stating that the mark is still in use in commerce for the goods for which it is registered. *See Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F.2d 881, 160 USPQ 715 (C.C.P.A. 1969).

31. However, if the mark is not in use in commerce due to special circumstance that the registrant cannot control, the owner may file an affidavit or declaration showing that nonuse is due to special circumstances that excuse the nonuse and is not due to any intention to abandon the mark. 15 U.S.C. §1058(b)(2); *Ex parte Kelley-How-Thomson Co.*, 118 USPQ 40 (Comm'r Pats. 1958).

32. Fraud occurs when an applicant "knowingly makes false, material representations of fact in connection with an application for a registered mark." *Sovereign Mil. Hosp. Ord. of Saint John v. Florida Priory of the Knights Hosp. of the Sovereign Ord. of Saint John*, 702 F.3d 1279, 1289 (11th Cir. 2012).

33. Fraud must be proven "to the hilt" with clear and convincing evidence. *Flame & Wax, Inc. v. Laguna Candles*, 2022 WL 3083070 (T.T.A.B. 2022) (citing *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009)). "This is necessarily a heavy

burden, and 'any doubt must be resolved against the charging party.'" *Sovereign Mil. Hosp. Order of St. John*, 702 F.3d at 1289 (quoting *In re Bose Corp.*, 580 F.3d at 1243).

34.     "To carry this burden, a party alleging fraud must show: (1) the applicant made a false representation to the USPTO; (2) the false representation was material to the registrability of the mark; (3) the applicant had knowledge of the falsity of the representation; and (4) the applicant made the representation with intent to deceive the USPTO." *Id.* at *20-21.

35.     Fraud, however, will not be found if the evidence shows that a false statement was made with a reasonable and honest belief that it was true, rather than an intent to mislead the USPTO into issuing or maintaining a registration to which the applicant/registrant was not otherwise entitled. *See In re Bose Corp.*, 580 F.3d at 1243; *see also Woodstock's Enters. Inc. (Cal.) v. Woodstock's Enters. Inc. (Or.)*, 43 USPQ2d 1440, 1443 (TTAB 1997), *aff'd*, 152 F.3d 942 (Fed. Cir. 1998).

36.     Barrco has failed to meet its burden to prove fraud on the USPTO by clear and convincing evidence. Even if Bajaj's non-use statements are inconsistent, fraud requires a higher burden than a showing of a mere inconsistency. Barrco has not demonstrated the requisite materiality, knowledge of the falsity, and intent to deceive to establish fraud.

37.     Consequently, Bajaj is entitled to judgment as to these counts.

### *Bajaj's Counterclaims*

38.     Bajaj filed an answer and counterclaim alleging 5 counts: (1) federal trademark infringement, (2) federal unfair competition, (3) false designation of

origin, (4) Florida trademark infringement, (5) cancellation of US Registration No. 5,579,859.

39. In claiming infringement against a registered trademark such as Barrco's, Bajaj must overcome the rebuttable presumption that the mark is protectable and distinctive. *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 950 F.3d 776, 783 (11th Cir. 2020)

<u>Counts I through IV of Bajaj's counterclaims</u>

40. In Counts I through IV of his counterclaims, Bajaj alleges federal trademark infringement (Count I-15 U.S.C. § 1114(1)), federal unfair competition (Count II-15 U.S.C. § 1125(a)), false designation of origin (Count III-15 U.S.C. § 1125(a)), Florida trademark infringement (Count IV- Fla. Stat. § 495.131) and cancellation of U.S. Registration No. 5,579,859 (Count V).

41. Claims for federal trademark infringement, federal unfair competition, false designation of origin, Florida trademark infringement, and cancellation of U.S. Registration No. 5,579,859 share similar elements. *Bose Corp. v. 558 Eagle Lake Partners, LLC*, 8:16-cv-2150-T-36AAS, 2017 WL 11630646, at *3 (M.D. Fla. Sept. 12, 2017); *Synergy Real Estate of SW Florida, Inc. v. Premier Prop. Mgmt. of SW Florida, LLC*, 2:11-CV-707-FTM-29, 2013 WL 2477187, at *3 (M.D. Fla. June 10, 2013); *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991).

42. To prevail on a trademark infringement claim under § 1114, a plaintiff must show: "(1) that they possess a valid mark, (2) that the defendants used the mark, (3) that the defendants' use of the mark occurred 'in commerce,' (4) that the

defendants used the mark 'in connection with the sale ... or advertising of any goods,' and (5) that the defendants used the mark in a manner likely to confuse consumers." *GS Holistic, LLC v. PRSN, LLC*, 6:22-cv-1985-PGB-EJK, 2024 WL 3738824, at *3 (M.D. Fla. July 1, 2024) (citing *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008)).

43. The party claiming federal unfair competition or state trademark infringement must also demonstrate actual geographic and product competition with the alleged infringer. *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1024-25 (11th Cir. 1989)

44. To prevail on a claim for unfair competition under 15 U.S.C. § 1125(a), a trademark owner "must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1977)).

45. Similarly, to establish false designation of origin under § 1125(a), "a claimant must show (1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *VantagePoint AI, LLC v. Doe*, 8:22-cv-01370-WFJ-AEP, 2023 WL 4033709, at *1 (M.D. Fla. May 4, 2023) (quoting *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001)).

46. Finally, it is settled law that the Florida trademark infringement claims rise or fall with the federal infringement and unfair competition claims. *Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*, 830 F.3d 1242, 1267 (11th Cir. 2016) (citing *Suntree Techs., Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012)).

47. The counter-plaintiff claiming trademark infringement bears the burden of proving that the defendant's mark is likely to cause consumer confusion. *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 117 (2004) (the "burden of proving likelihood of confusion rests with the plaintiff").

48. The hypothetical consumers in question are "reasonably prudent buyers." *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 979 n. 22 (11th Cir. 1983).

49. To determine if there is a likelihood of confusion the court must first consider seven factors that provide circumstantial evidence of likelihood of confusion exists: (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public. *Death Wish Coffee, LLC v. Death Hell Coffee, LLC*, 6:23-CV-1100-PGB-RMN, 2024 WL 1941728, at *3-4 (M.D. Fla. Mar. 29, 2024), *report and recommendation adopted,* 6:23-cv-1100-PGB-RMN,

2024 WL 1941715 (M.D. Fla. Apr. 15, 2024) (citing *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. The Florida Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem,* 809 F.3d 1171, 1181 (11th Cir. 2015)).

50. The Eleventh Circuit has said the first and last factor "'are the most important' of all the factors." *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1281 (11th Cir. 2020)).

51. The strength of a mark is judged by conceptual strength and commercial strength. *FCOA LLC v. Foremost Title & Escrow Services LLC*, 57 F.4th 939, 948 (11th Cir. 2023), *cert. denied,* 144 S. Ct. 103 (2023).

52. Commercial strength refers to the real-world consumer recognition of a mark, most often created by the efforts and work of the mark holder. *See Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1258 (11th Cir. 2008)("It is surely true that focusing solely on conceptual strength is an 'incomplete' method of analysis ...."); *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 974 n.13 (11th Cir. 1983); 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:81 (5th ed.)

53. "[D]etermining the strength of any mark requires weighing either or both circumstantial evidence of advertising and promotion and direct evidence of consumer recognition, such as by a survey." *Id.* (quoting *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1259 (11th Cir. 2016))

54. In drawing the ultimate inference about likelihood of confusion, the two most important circumstantial facts are respectively whether there is actual

confusion and the strength of the mark. *Id.* (internal citation omitted).

55. Bajaj has failed to meet his burden on Counts I through IV of his counterclaims because, among other things, there is simply no likelihood of confusion based on the differences in the products sold by the parties, the different channels of trade, the different presentations of the marks, the complete lack of any confusion in eight (8) years, and the complete and total lack of commercial strength to Bajaj's marks.

56. Consequently, Barrco is entitled to judgment as to these counts.

<u>Count V of Bajaj's Counterclaim</u>

57. In Count V of his counterclaims, Bajaj seeks cancellation of Barrco's U.S. Registration No. 5,579,859, based on an alleged likelihood of confusion with Baja's FUNATIK Registration No. 3611733 and his Second FUNATIC Registration, No. 4969987.

58. The Trademark Rules of Practice were amended in 1981 to provide for compulsory counterclaims in oppositions and cancellations and thereby "avoid piecemeal litigation of a multiplicity of actions and counteractions relating to a single conflict or controversy." *Jive Software, Inc. v. Jive Communications, Inc.*, 125 U.S.P.Q.2d 1175 (T.T.A.B. 2017) *quoting* Trademark Opposition and Cancellation Proceedings: Compulsory Counterclaims, Final Rule, 46 Fed. Reg. 6934, 6935 (Jan. 22, 1981) ("Final Rule").

59. The counterclaim is compulsory in the proceeding in which the registration has been pleaded, even if the defendant learns of the grounds after its answer has been filed. Because Bajaj did not raise this counterclaim in the original

proceeding, it is barred here.

60. Even if the claim was not barred, it fails on the merits. A registered trademark, such as Barrco's, is subject to a "rebuttable presumption that the mark [is] protectable or 'distinctive.'" *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 950 F.3d 776, 783 (11th Cir. 2020).

61. Accordingly, to successfully challenge a registered mark on distinctiveness grounds, the challenger must overcome the presumption of validity by showing – by a preponderance of the evidence – that the mark is *not* distinctive. *Id.*

62. Based on the lack of competition, differences in the products sold by the parties, the different channels of trade, the different presentations of the marks, the complete lack of any confusion in eight (8) years, the total lack of any commercial strength to Bajaj's marks, there is simply no likelihood of confusion. Accordingly, Count V of Bajaj's counterclaim fails. Barrco is entitled to judgment as to this count.

## Conclusion

63. Bajaj is entitled to judgment on Counts I, II, III, IV, V, and VI of Barrco's complaint.

64. Counts VII and VIII of Barrco's complaint are dismissed pursuant to Barrco's stipulation.

65. Barrco is entitled to judgment on Counts I, II, III, IV, and V of Bajaj's counterclaims.

66. This is not an exceptional case warranting attorney's fees as to either

party.

67.     The Clerk is directed to enter a final judgment in this case in accordance with this Order.  Following the entry of judgment, the Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>7th</u> day of April, 2025.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE